I can call the next case. Case number 12-1894 James DeMurray v. Benjamin LeCompte. And again when the lawyers step forward if you please identify yourselves for the record speak up loudly and clearly and spell your last names for us. And I think Justice Reyes has something to say before we proceed. I just wanted for the record to state that one of the attorneys for the appellees is actually someone that I'm familiar with. So if either side feels that I shouldn't participate in this I'd be more than happy to recuse myself and then we'll have another justice hear this matter. Thank you so much. And you can step forward. Good morning. My name is Steve Schulte. I'm here representing the appellants James Drury and Michael McLaughlin. I would like to reserve five minutes for rebuttal if that's possible. That's fine. Thank you. In this case the plaintiffs simply seek here their day in court for the claims they brought on their complaint. And the lawsuit that we filed has been filed under Chapter 65 Section 11-13-15 of the Municipal Code which we've called the Adjacent Landowner Act. And that act specifically authorizes the bringing of an action where there has been a violation of an ordinance. And the act specifically allows either a municipality or an adjoining landowner who's within 1,200 feet, which my clients are, of the property at the, we'll call it the Oakwood Farms. It's owned by the LaComps. The statute says, and it also provides that in addition to other remedies, which I think is important language that the legislature put into that statute, so what other remedies there may be such as you want to go to an administrative review, that's an option. But this statute in our view, respectfully, specifically authorizes landowners like my clients to bring a lawsuit seeking an injunction where there has been a violation of an ordinance. The statute, the language of the statute itself, has repeated references to words like suit, complaint, the court with jurisdiction, get a restraining order, a permanent injunction, preliminary injunction, references plaintiff, defendant. All those words are in this statute and that we respectfully submit are therefore a reason because it would allow a plaintiff such as my clients to come to court where there's been a violation of an ordinance. We have alleged there was a violation of the Home Occupation Ordinance in this case and we filed that lawsuit on January 31st, 2011. I would add just as far as statutory interpretation, I know the court's well aware of all those cases, we cited the Department of Transportation versus Illinois Commerce Commission case that says what the court's duty is in construing a statute and it said the court's duty in construing a statute is to ascertain and effectuate the legislature's intent by first looking at the statutory language itself. And if the language is clear, it must be given effect. And courts will avoid construing a statute in such a way that would render any portion of it meaningless. Well, we respectfully submit that the trial court in its ruling where it said we were supposed to now go through the administrative review process to review a letter that we also contest, its authenticity, validity, and authority. But a letter that was issued after we filed our lawsuit. We filed this lawsuit on January 31st, 2011. And at the time the village had already made a determination that the Oakwood Farms was in violation of its zoning ordinance. There was a zoning board hearing. There was a trial court ruling. The case was pending on appeal before the appellate court. We went to the village and asked them to enforce the ordinance. They said they weren't going to do it. And so then we filed this lawsuit. Then six weeks later, in mid-March, this Schumann letter surfaces, which we contest. We attack the authenticity, the authority, and the validity of that in our complaint. Mr. Schumann didn't even sign the letter. The way I've always looked at this particular statute was that when the municipality does not enforce their zoning laws and regulations, then the citizen within a certain contiguous area has the right to go in and try to enforce it. And that's what you were initially going to do. Yes, Your Honor. Okay. But in this particular case, what happened here was that the village, you know, by the use of a letter, found that they were in compliance with the home occupational use. Correct? No. Not correct, Judge. What the letter says, well, we contest that the letter is even authentic. I understand that. But the letter just says, it appears your farm complies with subsection G, which is one paragraph of a three-page ordinance. The Illinois appellate court, in the Lecomte v. ZBA case, ruled just the opposite and said you must comply with the entire ordinance. No, I don't argue any of those points. Okay. Okay. Where I have a problem with your case is that once they did that with the letter, see, it would appear that, you know, you have to exhaust your administrative remedies in regard to that letter before you can go in and enforce the ordinance. I will address that, Judge, because I think – Because otherwise, we would be interfering with the municipality's zoning process. Well, two points, Judge. The Dunlap case, which we cited, said the purpose of this section of the Act is to afford relief to private landowners in cases where municipal officials are slow or reluctant to act or where their actions do not protect the landowner's interests. Now, let me just go take your example. If, in this case, we know what happened. We filed our lawsuit. Six weeks later, the Schuman letter shows up and says they appear to be in compliance with subsection G only. The court says, plaintiff, you need to go through the administrative review process. All right. We go through the administrative review process. Let's say the ZBA says we lose. We go back to court to challenge that. And now the defendant comes up with a new letter from the village that says, well, now you're in compliance with the employment limitation under a different subsection. So now you're in compliance. So now I spend another year, go back through the ZBA process, and then I have to get a ruling. And then I get a ruling that says they win. I come back to court. I'm sorry, but your hypothetical is not your facts. You went before the ZBA, and then you didn't agree. No, I didn't go before the ZBA. No, the facts are, Your Honor, just. You didn't, wait a second. You didn't go before the, you didn't file something before the zoning board and then have it dismissed for want of prosecution? Yes, we did. I'm sorry, I was getting the time. That's the key here. I can explain that, Your Honor. If you look at the timeline, January 31, we filed a lawsuit. March 15, they filed the Schumann letter surfaces, which we're contesting and never got a chance to even have a hearing or have our due process rights considered to cross-examine that letter. Then, under the ordinance, it says you're supposed to file an appeal within 45 days, which we did to protect our client's rights. But in light of the statute that says, in addition to other remedies, we had two options. When we then got to the June 1 hearing, I said to the trial court, we're going to dismiss that case, the ZBA case, because they don't have any other options. They don't have any basis to hear the case. You do, Judge. The court does, because that's what the statute says. Our clients did not proceed with that ZBA hearing. It was dismissed for want of prosecution in August. And then after that was all the rulings that dismissed our case and said you should have gone to the ZBA. I respectfully disagree with that, because otherwise this statute would have no meaning. There's no exhaustion of administrative remedies language in this statute at all. It says a municipality or a landowner may institute a proceeding to seek an injunction if there's been a violation. Counsel, I have a question. What about the Topeka case that says that you have to exhaust all administrative avenues and seek remedies until you're done, until it's exhausted? Your Honor, the general rule, I agree with that. But where you have a statute here that specifically authorizes a court proceeding, we're proceeding under that statute, which authorizes a landowner or the municipality, but it specifically authorizes a landowner to bring an action for a violation of an ordinance. There was a determination before our lawsuit was filed that Oakwood Farms was in violation of the home occupation ordinance of the village. We then, because the village didn't want to proceed. Are you saying that came from the appellate court? The sequence of that case, Your Honor, was there was a 2008 cease and desist letter from the village to the Oakwood Farms. Right. That's for the agricultural findings. No. The defense argued agriculture. They said they were agriculture. The village defended and said you're not agriculture, but also said you don't comply with the entire zoning code, which included the home occupation ordinance. Did they address it? Yes, Your Honor, they did. They're brief. If you look at what's in the record, the village is brief, and the other case referenced the home occupation ordinance 24 times. 24 times. The home occupation ordinance was part of the testimony in the ZBA hearings in 2008 of the underlying case. Defendant wasn't claiming they were home occupation. They knew they could never comply because they can never comply because the home occupation ordinance is three pages. You have to comply with all of it. And it says the definition of a home occupation, there's three components to it. And the key one for our purposes is your home occupation has to be incidental and secondary to your residence. That's for things like a piano teacher who's got a room where the people come in and kids get piano lessons or an accountant comes in. But it's not for a situation. We're here where the Oakwood Farms and the Comps built a 30,000 square foot building across the small road from my clients and we're operating a commercial horse boarding operation with 45 horses coming in and people coming in and out and all the traffic and noise, which is exactly what that statute says a home occupation cannot be. And that's by, I believe you read the appellate court opinion, it discusses agriculture, no doubt about it. But I think if you look at pages 11 through 13 of that opinion, it also discusses they must comply with the entire zoning code. And the home occupation is discussed and ruled in the Illinois appellate court in the 2011 case said they're not in compliance because the barn, the farm, the big riding stable, 30,000 square feet, can never be incidental and secondary to the house. It's not and can never be a home occupation. Can't be. That's not, the ordinance was set for piano teachers, an accountant who's having someone come in their office. It's not supposed to have noise, traffic, can't be. Who came first, your client or the horse driver? Our client was there before, Judge. Yes. Counsel, going back to the Topeka case, are you saying that we shouldn't follow the Topeka case? No, Your Honor, I'm saying under this, there are exceptions to the Exhaustion of Administrative Remedies Rule. And one, we are attacking the authenticity of the Schumann letter, we are attacking the board's jurisdiction or some board even act, that's an exclusion to that. More importantly here, we have a specific statute that would, that allows and provides for a landowner to bring this case. That's what we're going under. If we had, as I was trying to explain before, if we had to go through the administrative review process every time, the ongoing violation of the ordinance would never get resolved because they would just come back with a new letter that said, now you're in compliance with this subsection. And now you're in compliance with that. I'd have to go through the whole process. I'd be years and I would never get to court. That would, in essence, render the language of the statute meaningless because a party could never ever get to court to seek its injunction. And I think if you look at the cases that we cite, the Dunlop case, there the plaintiff sued for under the same section, sued the village and sued the neighboring landowner regarding a patio room. And the court there, I gave you what the purpose of the act was, but there the court held that the plaintiff was entitled to bring a suit against his neighbor to have a hearing to determine whether there was, whether that variance that was granted by the village was in violation of the Lawren Act. So that's what we're asking for. We're asking for a hearing as to whether they're in violation of the ordinance and they can put in the Schuman letter if they want as evidence and we'll attack it. We should have the right to cross-examine that evidence because Mr. Schuman didn't sign the letter. And we've put in a boatload of evidence that showed they contest that. The LaSalle Bank case we cited, which is also another lawsuit under the act, there that case was sent back to the trial court for a hearing to determine if the adjacent property was in full compliance with the ordinance or not. That's all we're asking for. And in the, more importantly, I think in the case we cited, the City of Clinton v. Glasson granted its fourth district case, there the City of Clinton had zoned the defendant's property as residential. A year later the defendant went to the zoning board and got a variation, that said I can build multifamily there. After learning of that, the city then went into court under 1113-15, sought an injunction to stop that multifamily building even after it had started, when they saw the building starting to go up, they went into court. And the defendant there argued that the city should have proceeded under the administrative review process. And the court there held, however, we are satisfied that the injunction was properly sought under Section 1113.15 of the Municipal Code, which allows local authorities to seek injunction against construction in violation of municipal ordinances. So in that case, the municipality was allowed to proceed in court, even though its ZBA had determined that they were going to, they allowed a variance. So likewise, where the statute here provides for a municipality or a landowner can bring a case in court, that's what we are. We are a landowner bringing the case in court for the land is in violation of the Home Occupation Ordinance, no matter what the Schumann letter says. If they want to put the Schumann letter in as evidence, which says I comply with one subsection, that's fine. We'll contest it, and if I have the right to cross-examine that and keep that out, they can offer that. But all we are simply asking for is our day in court in the circuit court of Cook County, which is authorized by the statute. So we would ask that the court reverse and remand the case. Unless you have other questions, I'd be happy to answer them. Thank you very much. Good morning, Justices. My name is Kenneth Michaels. May it please the Court, the spelling of my last name is M-I-C-H-A-E-L-S. Your Honors, I represent the defendants and appellees, the owners of the Oakwood Farms of Barrington Hills. Before getting into the substance of my argument as I planned, I wish to just note that the appellees dispute the argument you just heard, that at any point prior to filing the litigation or during the Village-LaCombe's appeal before this Court, did the appellees ever claim that they were operating as a home occupation. And indeed, the Village reinforced that. As set forth on page 38 and 39 of our brief, we quote from the Village's response filed with this Court in the prior appeal between the Circuit Court or this Court, nor relevant to the Court's order. The issue on review is the correctness of the ZBA's November 2008 decision upholding the Village's order directing the LaCombe parties to cease and desist from using their property for commercial boarding of horses because it has not permitted agricultural use in an R1 zone district. Not whether the current use of the property is compliant as a home occupation. The parties were all in agreement this was not involving home occupation. In fact, the LaCombe's purposely never claimed to be a home occupation or to comply with that ordinance until after they lost and their battles to use the property as an agricultural use for horse training, breeding, and boarding. Today we are asked, today we ask this Court to affirm the trial court's dismissal of the appellant's action in the Circuit Court of Cook County. The appellants failed to exhaust their administrative remedies and the time when they filed their action, was it moot at that point? No, the action became moot. The triggering event was the issuance of the Village's letter. But at the start of the lawsuit it was? At the start, no. They would have the right if we took away that letter, wouldn't they? Under 11-13-15, correct. That's been our position How does that letter change it? Because of Division 13 of the Illinois Municipal Code. Division 13 of the Illinois Municipal Code is relating to zoning and the statutes within this Division 13 must be construed together. They are not to be construed independently as in any act. Division 13 provides for the creation of a zoning enforcement officer within municipalities as well as a zoning board of appeals. The zoning board of appeals has a multitude of functions within a municipality. Included in these functions pursuant to Division 13 of the Municipal Code is a process to administratively review any acts, omissions, determinations of the zoning enforcement officer. Indeed, under Division 13, once the zoning enforcement officer takes some action, or it could be an omission, but usually it's some action, then anybody with agreements has 45 days to lines as any other administrative agency. And upon their final determination, which may include affirming the zoning officer, reversing or modifying, Division 13 gives plenary powers to the zoning board of appeals to look into the facts presented and to conduct a hearing. And only upon its final written determination is a brief party then permitted to go was triggered by the plaintiffs. Let me ask you a question. If what you say would be true, then if somebody filed such a lawsuit because a property was in nonconformance with the zoning act, and then they kept filing matters before the ZBA, they could go on until infinity before anything would ever be decided? No, that's, Your Honor, respectfully, I don't believe that is the case. And that's along the lines of the argument we heard this morning. But that is not what happens. No, I'm not saying it happened here, but I'm saying it could certainly happen because you could be filing before the ZBA forever. Well, there would be an exhaustion of zoning arguments to make. In this case, there was an alternative argument to make, that the cops were not using while they were trying to get an adjudication that this was an agricultural use of their land. But I understand what the court is saying there, but I do not believe that that is the case. I do not believe that it would go on in perpetuity as suggested here. And in fact, there's a lot of practical matters that we have to bring in, such as the cost of doing these hearings and the cost of appearing before the Zoning Board of Appeals. I mean, the ultimate issue on a situation like this is going to be decided by the courts, is it not? It is, and it isn't. Yes, it is, ultimately, but there's an administrative review standard that's applied when the courts review it. But there was nothing of an administrative review pending at the time the lawsuit was filed. No, there was not. So if the lawsuit is a dilatory tactic that could go on until infinity, then it doesn't seem very logical that the courts shouldn't decide the issue as soon as practical. I don't think the lawsuit was a dilatory tactic, nor do I believe that going to the Zoning Board of Appeals is a dilatory tactic. The legislature has determined that the Zoning Board of Appeals is the proper force to review the actions of the municipality zoning enforcement officer. The arguments that appellants raise here very well could have been made before the Zoning Board of Appeals. They had their day in court. I understand that. The question is, how many times did you go before the ZBA here? Well, my clients appeared once, the LaCombe's appeared once before the ZBA. But wasn't there two matters before the ZBA, or just one matter? On the issue of zoning, there was our matter, and then the appellants filed their appeal with the ZBA. And we appeared at that hearing where the appellants did not appear. We did appear at that hearing, yes. So there would be a second matter, yes. Counsel, I have a question with regards to the Schumann letter. The Schumann letter seems to be the key here with regards to the issue of mootness. They argue, number one, the authenticity of the letter, and they also question Schumann's interpretation of the statute, the code. Can you address that, please? Yes. First, the authenticity of the letter. The letter was authenticated two times evidentiary, as an evidentiary matter before the trial court. Once by the recipient of the letter in an affidavit, and second with the second judge. The first judge on the matter was Judge Sebastian Patti, and the second judge was Judge Valderrama. The second time it was again authenticated, this time as a public record using an affidavit from the village assistant clerk, I believe it was at that point. The primary clerk was not in office. The assistant clerk was performing the duties of the primary clerk. So the letter was authenticated twice there. And also, at the invitation of Judge Patti on the first motion to dismiss at that time where Judge Patti issued sui sponte, a rule to show cause why the case should not be dismissed because of the Schumann letter, one of the village attorneys, Mr. Lynch, also sent a letter to the counsel involved that was presented into the record affirming that this was the final decision. And again, with all respect to the appellant's argument, the Schumann letter did not just say that one portion of the home occupation ordinance was complied with. It recognized that there appeared to be a compliance, after inspecting my client's premises, that there appeared to be compliance with the home occupation ordinance. The argument that appellants want to raise in the trial court, which could have been raised just as well before this EVA, is that a party does not have to comply with just one portion of the zoning ordinance. And with all due respect, that argument does not fly and the village does not accept that argument. That's just the appellant's argument. Regarding the second prong of Your Honor's question. Well, their interpretation, because there was a question whether or not you look at the entirety of the zoning code.  Yeah. Regarding the case law that appellants rely on, primarily they rely on Dunlap, for lack of another. But both the LaSalle National Bank case and the Dunlap cases are cases involving zoning variance and a special use permit. Those are entirely different matters under land use legal process in Illinois. And they're also different matters from an administrator review of a zoning enforcement officer under Division 13. And to apply 11.13.15 and a zoning variance or special use permit, which are classified as legislative decisions, to attempt to apply and say the same rules apply to circumvent the ZBA's jurisdiction here in an administrative appeal is just incorrect. Dunlap case found that a grieved landowner could not use 11.13.15 to sue the municipality. 11.13.15 permits the municipality or landowner within 1,200 feet to file, and I'm looking at the exact language, because this is important. Because it's close. What you're saying is very close. I'm sorry? I said what you're saying is very close to what the statute says. Right. And the point is that they're allowed to bring an appropriate action or proceeding. In this case, Division 13 of the zoning code identifies the appropriate proceeding. It's the appeal before the Zoning Board of Appeals, which is exactly what the appellants did. They filed the appeal. They recognized their obligation. The trial court dismisses the case. The parole 23 order comes down in the village action, which later evolved into an opinion. But then, after all that knowledge, the appellants willfully choose to disregard their own appeal and not show up. They made a conscientious decision not to pursue their day in court. They've had their day in court, and they chose not to take it. We've also, as set forth in our brief, for a number of reasons, the appellate court did not rule that the LeComps did not comply with the Home Occupation Ordinance. It was never an option. It was never an argument presented. And the village has acknowledged that. We've certainly acknowledged that. The appellate court did reference the Home Occupation Ordinance, as did the appellant's brief, and I believe probably, or appellee's brief on that one. And probably our brief did as well, because the Home Occupation Ordinance was part of the zoning plan or scheme of Barrington Hills. And by the way, Barrington Hills has adopted all the appropriate ordinances and legislation to enact Division 13, as set forth, many times verbatim, as set forth in the Illinois statutes. Is your client still operating a commercial facility? Our client, yes, is operating a forest boarding and, well, it's a training and breeding facility. It's practically, as a non-equestrian, I had to learn this, but it's practically impossible to do horse training unless you actually board horses there. And our answer would be all farming and agricultural uses of land are ultimately commercial, except perhaps victory gardens. And under what zoning classification is that an allowable use? Home occupation. It's been allowed by the village as home occupation, as well as I think the record reflects there's about 20 other farms doing the same. And also as set forth in the brief. And of course that would pertain to that particular village, because most people have horses there. Because Barrington Hills is a very unique village on the western edges of Cook County. It also includes, I believe, three other counties. Henry Cane and Lake, I think, are also involved. It covers them all. I mean, that would not be a valid home occupational use in Northbrook or Glenview? I'm not familiar with the ordinances, but I don't foresee that happening there. I certainly don't see it happening in the city of Chicago. We're going to soon have a home occupation with equestrian. But part of the... I mean, can you have a home occupational use if you are allowing others to board their horses? Yes, it's permitted under... The Oakwood Farms is sitting on 132 acres of land. This is not just a 25 by 120 foot lot. It's sitting on a large tract of land, and many of the residents do board their horses at Oakwood Farms or others. Horizon Farms, as the record reflects, had 200 boarded horses at one point. It's now, I believe, shut down because of foreclosure proceedings, but that's a different issue. Indeed, Mr. Jury, when he became president of the polo club, recommended that... and was a friend of Dr. Lecomte's, recommended that the polo club members board their horses at the Lecomte facilities because the Lecomtes also have a world-class polo field on their farm, and that polo field is used for charitable and other uses throughout the summer. Defendants are... I'm sorry, appellants also raise in their brief, and I just wish to briefly note, a due process argument that was never raised below. It's not supported by any legal authority in the brief, and frankly, it should be just not considered by this court because it's never been developed as a legal argument, and it lacks for any specificity how they were denied due process through this proceeding. And for these reasons, we ask this court to affirm the trial courts twice deciding below that the case be dismissed for want of judiciability and because of the appellant's failure to exhaust their remedy, administrative remedies. Thank you. Thank you. Counsel, you just have a couple of minutes. I'll address the points as quickly as I can. The first point, the counsel said the issue of the Home Occupation Ordinance was not in the other case below. We respectfully disagree. The record is replete with that. If you look at the ZBA transcript where Doug Wambach, the village counsel, argued the HOO, the members of the ZBA discussed the HOO. Granted, the defendant argued their agriculture, didn't argue I'm HOO, but the village did argue that they can't comply with the code, so that's clearly in there. And if you go to the ZBA transcript of that prior case, look at Judge Arnold's transcript that we have in the record. She asked questions about the HOO. You look at the village's appellate court brief, 24 times they cite. Is that all part of the record before us? Yes. Yes, it is, Your Honor. It's all in there. And if you then look at the 2011 Illinois appellate court opinion in LeCombe versus the Zoning Board, I referenced page 11 to 13. I invite the court to please read those pages. Page 11 starts with village's zoning code. Next, LeCombe's argue that using their stables for the commercial boarding of horses comports with the village zoning code. We disagree. The court goes on and cites the ordinance and says, because LeCombe's are using the stable for the commercial boarding of horses, which is a primary use and not a subordinate use, it is a use that does not comport with the village's zoning code. The next section starts, viewed in its entirety, the zoning code supports the zoning board's decision. Then you can read those pages, but the Illinois appellate court said, the record reveals that Oakwood Farm's primary purpose is the commercial boarding of horses, which is a use that is not incidental and secondary to residential property. We find that the commercial boarding of horses does not comport with the overall intent of the zoning code. The zoning code is in the record as well. The home occupation ordinance is in the record. It consists of, I have a copy here, it goes, the box starts here, it goes about three pages. The section that the Schumann letter refers to, and I have that here as well, you're invited to read that, refers only to subsection G. But the, to be a home occupation, you've got to comply with all three pages. And they can never comply with the home occupation because their 30,000 square foot stables is not incidental and secondary to the principal use of the dwelling units that's there, that's housed. It's a commercial horse boarding operation. It could never comply with the home occupation ordinance. It simply can't be. The Schumann letter we've discussed, the council said it was authenticated. The person who authenticated from the village, Dolores Trandle, is the person whose initials are next to Mr. Schumann's name. We put another letter in the evidence that showed Don Schumann's actual signature. This isn't his signature. She initialed it, and we say she initialed it due to some improper activities, which are alleged in our complaint. I won't spend time on that. You can read our complaint, that how this Schumann letter came about. And we think it was issued improperly. I'll be polite. But there are, we think, gross misconduct in it. We put affidavits in that show that. And we believe we'd have been entitled to get a hearing to contest that. Counsel, I don't mean to interrupt, but the authentication that you referred to, is that the first occasion or the second occasion? Because counsel, in his oral argument, indicated that it was authenticated twice. He said it was authenticated by his client who said she received the letter. I don't doubt she received the letter, Judge. Okay. I don't doubt she received the letter. I mean, I have no reason that they didn't get the letter. And the letter is in the village's files. Apparently that's in the files, too. But the letter wasn't written by the person who signed it. That's the issue. The counsel argued that the compliance with the entirety of the code, I've already discussed that, as far as the Dunlap case. In the Dunlap case, there was a hearing in that case. There were depositions taken. The court ruled, and while the court did rule in Dunlap that the plaintiff could not sue the village under the act we're talking about, the plaintiff there did also sue the adjoining landowner, and that case was allowed to proceed against the adjoining landowner. That's all we're asking for in this case. And finally, just let me address the ZBA hearing where counsel says our clients didn't show up. In fact, our client sent a letter to the village before that hearing and said, there's no basis to hear this case, there's no jurisdiction for this case, and that's why they didn't show up. So with that, Your Honor, if you have any more questions, I'd be happy to answer those. I just have one question. Sure. How come you didn't make the village a defendant in this case? You can't, Judge. Okay. Under the Dunlap case, you can't sue the village. Okay. That's what Dunlap held, because Dunlap tried to sue the village, and Dunlap sued the village, and Waymire, who's the neighbor, appeals court said can't sue the village. Okay. So that's why we didn't sue the village. Thank you very much. Thank you. Thank you. We'll certainly take these cases under advisement, and we stand adjourned.